UNITED STATES of America

v.

Roland HENRY and James Hamilton.

Crim. No. 91–628–(01).

United States District Court,
District of Columbia.

Jan. 30, 1992.

Reita Pendy, Office of Federal Public Defender, Washington, D.C., for defendants.

Karen Rhew, Office of The U.S. Atty., Washington, D.C., for plaintiff.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

### I. FACTS

#### A. ROLAND HENRY'S ARREST

On October 4, 1991 at approximately 1:00 p.m. Defendant Henry exited apartment B–34 and entered the hallway of the apartment building at 134—42nd Street, N.E. The United States Marshal Service was surveilling this apartment pursuant to information from a confidential informant that Henry was inside. Henry was wanted by the police on a parole violation warrant. Marshal Sloane was hiding behind a staircase in the hallway outside of Henry's apartment. When Henry entered the hallway for a second time, Marshal Sloane exited from behind the staircase, pointed his gun at Henry and told Henry to freeze and that he was under arrest. Henry froze and put his arms in the air. Several Marshals and police officers approached the apartment building door which was locked. Still holding the gun on Henry, Sloane backed up and opened the door for the officers. The officers quickly entered the building and tackled Henry to the ground, placing handcuffs on him and patting him down for weapons. Within minutes of the arrest, the officers entered apartment B–34. Several of the government's witnesses testified that Defendant Henry asked the officers to allow him to enter the apartment in order to change his clothes before

being taken to the police station. The Court hereby finds this testimony of doubtful credibility. Nonetheless, for reasons stated below, the officers were justified in entering the apartment in order to conduct a protective sweep of the apartment. In the bedroom of the apartment the officers found in plain view a .38 calibre revolver, marijuana, and a plastic bag containing heroin. Meanwhile, Henry was being held in the living room.

After bringing Henry into the apartment, the officers attempted to read him his rights. Henry interrupted the officers and told him he knew what his rights were. Henry ultimately signed a PD 47 form stating that his rights were read to him and he did not wish to waive them. The form stated that he was not willing to answer questions without an attorney.

Before and subsequent to invoking his rights, Henry made statements that he would "take the weight for this" and that everything in the apartment belonged to him.

Henry remained under arrest in the apartment for approximately six hours. At approximately 7:00 p.m. he was taken to the police station. Henry was ultimately indicted on the charges of possession with intent to distribute heroin, use of a firearm in a drug trafficking offense, and possession of a firearm by one previously convicted of a felony.

### B. JAMES HAMILTON'S ARREST

James Hamilton drove up to 134—42nd Street, N.E. in a cab at approximately 1:00 p.m. on October 4, 1991. He exited the cab and, with assistance from the cab driver, carried four bags containing his personal possessions up to the apartment building. Through the window in the door of the building Hamilton saw Henry inside the building being arrested by Marshal Sloane. Henry apparently mouthed to Hamilton

"they got me." As Hamilton walked back towards the cab, two police officers drove past him. In the car Marshal Nobles told Officer Robinson, without any explanation, to stop Hamilton. Officer Robinson stopped Hamilton and requested some identification. Robinson also requested identification from the cab driver and made a note of the cab driver's name and address.[1] The information obtained from the cab driver was never made available to defense counsel.

At the same time Robinson stopped Hamilton, Marshal Nobles entered apartment B–34. A few minutes passed and Nobles returned from the apartment and approached Hamilton. Robinson told Nobles that Hamilton had produced identification stating that he was James Hamilton. Nobles responded that Hamilton resembled a fugitive named Thomas Farmer. Hamilton was arrested and placed in handcuffs and his rights were read to him. Robinson reached into Hamilton's pocket and gave the cab driver $10. The cab driver left the scene. Hamilton was taken into the apartment.

After being held in the apartment for approximately one hour Hamilton signed a "Consent to Search" form and a PD 47 form. Approximately four hours after Hamilton entered the apartment the police brought his four bags of personal belongings in from outside. There is conflicting testimony as to whether Hamilton consented to a search of his bags. It is undisputed that Hamilton gave no written consent to search the bags. Nonetheless, the bags were searched and heroin and other contraband was found. Hamilton was ultimately indicted on the following charges: possession with intent to distribute heroin, use of a firearm in a drug trafficking offense, and possession of a firearm by one previously convicted of a felony.

1. At the hearing held on the Motions in this case, there was conflicting testimony as to who actually obtained the information from the cab driver. Nonetheless, the defense counsel was denied any access to the cab driver's identity and thus denied an eyewitness to Defendant Hamilton's arrest.

**4**

Late in the afternoon, Officer Robinson obtained a search warrant for the apartment. This was done despite the fact that Hamilton allegedly consented to a search of the apartment. During the search, police discovered the following: a Tec 9 automatic machine gun and bullet-proof vest; a sawed-off shot gun, jacket and ski masks; ammunition; $351 in cash; and assorted narcotics paraphernalia.

At approximately 7:00 p.m. Henry and Hamilton were taken to the police station.

## II. ISSUES

### A. PROTECTIVE SWEEP

■ The first issue presented by the motions is whether, following the arrest of Defendant Henry in the hallway of the apartment, the police were justified in conducting a protective sweep of the apartment. Any items found in plain view in the apartment are admissible only if the police were lawfully present in the apartment. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

■ In *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), cited by both the government and defense counsel, the Supreme Court was faced with the issue of "what level of justification is required by the Fourth and Fourteenth Amendments before police officers, while effecting the arrest of a suspect *in his home* pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises." 494 U.S. at 327, 110 S.Ct. at 1094 (emphasis added). The Court defined a protective sweep as a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." 494 U.S. at 327, 110 S.Ct. at 1094. To uphold such a search there must be a reasonable belief, supported by specific and articulable facts, that the area swept harbored an individual posing a danger to the officers or others. Otherwise the sweep would violate the Fourth Amendment. In this case, however, Henry was arrested in the hallway outside of the apartment. He

was not arrested in his home. Therefore, *Buie* is not precisely on point.

*United States v. Sheikh,* 654 F.2d 1057 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982), allowed a protective sweep of a hotel room following an arrest in the hall outside the room. The court reasoned that a cursory check of the room is justified if the police have "reasonable grounds to believe that there are other persons present inside who might present a security risk." *Id.* at 1071. Also, in *United States v. Owens,* 782 F.2d 146 (10th Cir.1986), the Court followed *Sheikh*'s reasoning but found that no protective sweep of the hotel room was justified. In *Owens,* after arresting the defendant in the hallway outside of his hotel room, the officers retreated to their surveillance room and phoned the hotel manager. It was after this time had passed that the officers decided to conduct a protective sweep of defendant's hotel room. There was no indication that the officers conducted the sweep due to a reasonable belief that their security was at risk.

■ Therefore, in order to conduct a protective sweep of an apartment building following an arrest in the hallway of the building, police officers must (1) reasonably believe that there are other persons inside who present a security risk, and (2) limit the "search" of the apartment to a quick and limited search of premises conducted to protect the safety of police officers or others, *Buie,* 494 U.S. 325, 110 S.Ct. 1093. Also, because the protective sweep is an exception to the warrant rule, the government bears the burden of justifying the sweep. *United States v. Walker,* 673 F.Supp. 292, 279 (N.D.Ill.1987), *United States v. Patino,* 830 F.2d 1413, 1415 (7th Cir.1987), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989).

■ Here, the defense counsel argues that the police had no reason to believe that anyone but Henry was in the apartment. Defense counsel also points out that almost 15 officers participated in this arrest. Furthermore, the officers had the apartment under surveillance at least since 9:30 the morning of October 4, 1991 and should

have had some indication as to who was in the apartment by 1:30 p.m. when the arrest occurred.

To uphold such a search there must be a reasonable belief, supported by specific and articulable facts, that the area swept harbored an individual posing a danger to the officers or others. The Court finds that it was reasonable for the officers on the scene to conduct a protective sweep. The fact that Defendant Henry was a known fugitive combined with his prior record of convictions and the informant's belief that Henry was often armed could support a reasonable belief that the area swept harbored an individual who could pose a danger to the officers. Therefore, the Court finds that the entry pursuant to a protective sweep was justified and the evidence found in plain view is admissible.

### B. HENRY'S STATEMENT

Defendant Henry was advised of his rights and signed a PD 47 form stating that he did not wish to waive these rights. He invoked his rights to an attorney and to remain silent. Therefore, any interrogation by the police officers must legally have ceased.

The record shows that before and subsequent to invoking his right to counsel and to remain silent, Henry made incriminating statements. These statements are admissible only if they were made of Henry's own free will. If, however, the statements were the product of police interrogation after Henry invoked his right to counsel the statements are not admissible.

The Court hereby finds that the statements were not the product of police interrogation conducted after Henry had invoked his right to counsel and to remain silent. Therefore, the statements are admissible.

### C. PROBABLE CAUSE TO ARREST HAMILTON

Defendant Hamilton testified that at some point while the police were questioning him outside the building, Marshal Noble stated that he thought Hamilton was a fugitive named Thomas Farmer.

Based on this belief, the officers were entitled to stop Hamilton and ask him for identification. Police may stop an individual and request identification on less than probable cause. *United States v. Allison,* 616 F.2d 779 (5th Cir.1980); *United States v. Michel,* 588 F.2d 986 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). An investigative stop is justified if the officer has reasonable ground to believe that the individual is involved in criminal activity.

In order to continue to detain Hamilton, however, the officers needed probable cause to believe he had committed a crime. After Hamilton produced identification stating that he was James Hamilton and after Marshal Nobles made a cursory check on Hamilton, Hamilton was handcuffed, read his rights and taken inside the apartment and held. In short, Hamilton was arrested. Marshal Noble and Marshal Robinson, the arresting officers, testified that Hamilton was placed under arrest because he was believed to be Thomas Farmer. According to their testimony, Hamilton was not arrested based on any relationship he may have had to the investigation ongoing in apartment B–34. Based on the testimony given, the Court hereby finds that the officers lacked probable cause to arrest Hamilton. Therefore, the products of this illegal arrest must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The products of this arrest are: Hamilton's "Consent to Search" form, the contraband found in Hamilton's personal bags and luggage, and any other statements made by Hamilton. Therefore, this evidence must be suppressed.

### D. EVIDENCE OBTAINED BY SEARCH WARRANT

The search of the apartment was conducted pursuant to a search warrant obtained the afternoon of October 4, 1991. The affidavit supporting the warrant was based on three factors: (1) the informant's information as to what would be found in the apartment, (2) the fact that

contraband in plain view had been seized earlier and (3) the fact that Mr. Hamilton consented to a search of the apartment. Because the Court has determined that Hamilton's consent was the product of his illegal arrest, this consent must be excluded as the basis on which a search warrant would issue. The Court finds, however, that the two remaining factors would adequately support the issuance of a search warrant. Therefore, the warrant was validly issued and the evidence found pursuant to the search of the apartment is admissible.

## E. HAMILTON'S MOTION FOR SEVERANCE

Hamilton has moved to sever the trials of the defendants in this case based on the fact that Henry would, in a severed trial, provide exculpatory testimony for Hamilton. If the trials are not severed, however, the privilege against self-incrimination would prevent Henry from providing this testimony.

Federal R.Crim.P. 8(b) provides that joinder of defendants for trial is proper when the defendants are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense." The trial judge has discretion to permit severance, but the balance is to be struck in favor of joint trials. *United States v. Manner*, 887 F.2d 317, 324 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). However, as defense counsel points out, "severance is obligatory where the defendant's case rests heavily on exculpatory testimony of his codefendant, willing to give such testimony but for the fear that by taking the stand in the joint trial he would jeopardize his own defense." *United States v. Shuford*, 454 F.2d 772, 776 (4th Cir.1971).

*United States v. Ford*, 870 F.2d 729 (D.C.Cir.1989) set forth the standards for determining the disposition of a severance motion. Hamilton must demonstrate (1) bona fide need for Henry's testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) the

likelihood that the Henry would testify if the trials were severed.

In this case the need, substance, and the exculpatory nature of Henry's testimony is clear. Henry would allegedly testify to the fact that Hamilton did not live in the apartment at the time the evidence was seized and that Hamilton had no control over the contraband. If the trials are not severed, however, Henry would not jeopardize his own interests by testifying to this information. Defense counsel, based on information and belief, asserts that Henry, if given an opportunity to testify without fear of self-incrimination, would provide exculpatory testimony for Hamilton. This is sufficient to satisfy the "threshold showing" required by *Ford*.

Once this threshold showing is made, the court must (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the prejudice which would occur if the codefendant's testimony was not given; (3) consider the effects of judicial economy; and (4) give weight to timeliness of the motion. *Ford* at 731.

After considering these factors, the Court hereby grants Defendant Hamilton's Motion to Sever.

An appropriate Order accompanies this Memorandum.

## ORDER

Upon consideration of Defendant Henry's Motion to Suppress Tangible Evidence and Statements, and the Government's Opposition thereto, and Defendant Hamilton's Motion to Suppress Evidence and Motion to Suppress Statements, and the Government's Opposition thereto, and Defendant Henry's Motion to Compel Disclosure of Confidential Informant, and the Government's Opposition thereto, and Defendant Hamilton's Motion to Sever, and the Government's Opposition thereto, it is by the Court this 30th day of January, 1992;

ORDERED, that, for the reasons stated in the accompanying Memorandum, Defendant Hamilton's Motion to Suppress State-

ment is granted, Defendant Hamilton's motion to suppress evidence is granted in part and denied in part, Defendant Henry's motion to suppress tangible evidence is denied, Defendant Henry's motion to suppress statements is denied, Defendant Henry's motion to compel disclosure of confidential informant is denied, Defendant Hamilton's motion to sever is granted.